# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN
### MILWAUKEE DIVISION

| | |
|---|---|
| IN RE REV GROUP, INC. SECURITIES LITIGATION | Lead Case No. 2:18-CV-1268-LA |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND APPROVAL OF THE PLAN OF ALLOCATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

I. FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 2

    A. Procedural History of the Case ............................................................................. 2

    B. Lengthy Settlement Discussions Culminate in an Excellent Arm's-Length
    Settlement ............................................................................................................ 5

    C. Preliminary Settlement Approval is Granted and the Notice Program Undertaken .. 6

II. STANDARDS FOR FINAL APPROVAL OF SETTLEMENT ..................................... 7

III. The Settlement is Fair, Reasonable and Adequate .................................................... 9

    A. Lead Plaintiff and Lead Counsel Adequately Represented the Classes .................... 9

    B. The Settlement Was Negotiated at Arm's Length ................................................. 11

    C. The Settlement Provides Adequate Relief for Members of the Classes ................. 12

        1. The Effective Process for Distributing Relief to Members of the Classes ..... 13

        2. The Anticipated Attorneys' Fees and Expenses Are Reasonable ................... 15

    D. Members of the Classes Are Treated Equitably Relative to One Another ............. 15

IV. THE CLASSES SATISFY RULE 23 ............................................................................ 16

    A. The Classes Meet the Requirements of Rule 23(a): Numerosity ........................... 16

    B. Rule 23(a)(2): Questions of Law or Fact Are Common ....................................... 17

    C. Rule 23(a)(3): Plaintiffs' Claims Are Typical ..................................................... 17

    D. Rule 23(a)(4): Plaintiffs Are Adequate Representatives ....................................... 18

    E. The Classes Meet the Requirements of Rule 23(b)(3) – Predominance and
    Superiority ........................................................................................................ 19

CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................. 19

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980), *overruled by*
  *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)........................................................... 8, 9, 10

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014)........................ 16

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
  768 F.2d 884 (7th Cir. 1985) ........................................................................................ 7, 9, 10

*Goldsmith v. Tech. Sols. Co.*,
  No. 92 C 4374, 1995 WL 17009594 (N.D. Ill. Oct. 10, 1995).................................................. 7

*Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P. (in re Harnischfeger Indus. , Inc.*,
  212 F.R.D. 400 (E.D. Wis. 2002) ................................................................................. *passim*

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*,
  988 F. Supp. 1130 (N.D. Ill. 1997) ................................................................................. 10, 11

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................... 15

*In re Illumina, Inc. Sec. Litig.*,
  No. 3:16-CV-3044-L-MSB, 2019 WL 6894075 (S.D. Cal. Dec. 18, 2019)............................... 8

*In re Mexico Money Transfer Litig. (W. Union & Valuta*),
  164 F. Supp. 2d 1002 (N.D. Ill. 2000*)*,
  *aff'd*, 267 F.3d 743 (7th Cir. 2001) ..................................................................................... 11

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................... 12

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) .......................................................................................... 7, 9, 10

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank & Tr. Co. of Chi.*,
  834 F.2d 677 (7th Cir. 1987) .................................................................................................. 9

Case 2:18-cv-01268-LA   Filed 11/04/21   Page 3 of 26   Document 126

*McKinnie v. JP Morgan Chase Bank, N.A.*,
   678 F. Supp. 2d 806 (E.D. Wis. 2009) ................................................................. 7, 15

*McPhail v. First Command Fin. Plan., Inc.*,
   No. 05CV179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) .................................. 12

*Riordan v. Smith Barney*,
   113 F.R.D. 60 (N.D. Ill. 1986) .................................................................................... 16

*Shah v. Zimmer Biomet Holdings, Inc*,
   No. 3:16-CVR-815-PPS-MGG, 2020 WL 2570050 (N.D. Ind. May 21, 2020) .......... 16, 17, 18

*Shah v. Zimmer Biomet Holdings, Inc.*,
   No. 3:16-CV-815-PPS-MGG, 2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) .................... 8, 12

*Smoot v. Wieser Bros. Gen. Contr.*,
   No. 15-cv-424-jdp, 2016 WL 1736498 (W.D. Wis. Apr. 28, 2016) ....................................... 10

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) ...................... 17, 18

*Weinberger v. Thornton*,
   114 F.R.D. 599 (S.D. Cal. 1986) .................................................................................. 18

*White v. Nat'l Football League*,
   822 F. Supp. 1389 (D. Minn. 1993) ............................................................................. 15

*Wong v. Accretive Health, Inc.*,
   773 F.3d 859 (7th Cir. 2014) ...................................................................................... 15

## STATUTES

15 U.S.C.A. § 78u-4(a)(7) ..................................................................................................... 1

## RULES

Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 16

Fed. R. Civ. P. 23(a)(2) ................................................................................................. 7, 17

Fed. R. Civ. P. 23(a)(3) ...................................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 18

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 18, 19

Fed. R. Civ. P. 23(e)(1)................................................................................................ 1, 2

Fed. R. Civ. P. 23(e)(2)........................................................................................ 2, 7, 8, 15

Fed. R. Civ. P. 23(g) ...................................................................................................... 18

## DOCKETED

*Bitar v. REV Group, Inc. et al.*,
  No. 2:18-cv-06239 (C.D. Cal.) ...................................................................................... 3

*In re Bofi Holding, Inc. Securities Litigation*,
  No. 3:15-cv-02324 (S.D. Cal.)........................................................................................ 9

*Bucks County Employees Retirement System v. REV Group, Inc. et al.*,
  No. 2018-CV-001501 (Wis. Cir. Ct. Waukesha County).............................................. 3

*In re KIT Digital Securities Litigation,*,
  12-civ-4199 (S.D.N.Y.) .................................................................................................. 9

*Marinoff v. REV Group, Inc., et al.*,
  No. 2:18-cv-05095 (C.D. Cal.) ...................................................................................... 3

*Rajaram v. REV Group, Inc., et al.*,
  No. 2:18-cv-05693 (C.D. Cal.) ...................................................................................... 3

*Yandoli v. REV Group, Inc. et al.*,
  No. 2018-CV-001163 (Wis. Cir. Ct. Waukesha County)............................................... 4

## PRELIMINARY STATEMENT

Lead Plaintiff respectfully submits that the Settlement is a very favorable result for the Classes and should be approved by the Court. The Settlement provides a recovery of $14,250,000 in cash to resolve all claims in this Action.[1] This amount constitutes over 9% of Plaintiffs' maximum damages for the Classes, which is twice as large as the median of settlements approved in 2020 for securities class actions settled prior to overcoming a Rule 12(b)(6) motion. *See infra* at 11-12.

On August 24, 2021, the Court preliminarily approved the Settlement pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure and authorized notice of the Settlement to the Classes (the "Preliminary Approval Order"). In accordance with Rule 23(e)(1), this decision was based on a showing that the Settlement "will likely earn final approval after notice and an opportunity to object" and if the Classes can be certified. *See* Rule 23(e)(1)(B) and 2018 Advisory Notes Rule 23(e)(1).

Lead Counsel and Claims Administrator JND Legal Administration ("JND") provided notice to the Classes in full compliance with the Preliminary Approval Order. The notice procedures satisfied the requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, the Securities Act of 1933 ("Securities Act") and the Securities and Exchange Act of 1934, 15 U.S.C. Section 78u-4(a)(7) ("Exchange Act"), as amended by the Private Securities Litigation Reform Act ("PSLRA"). On November 4, 2021, JND reported that in addition to timely publishing notice in *Investor's Business Daily* and on the Internet, 29,166 notices were disseminated to the Classes. *See* accompanying Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice Packet;

---

[1] Otherwise undefined terms have the definitions set forth in the May 19, 2021 Stipulation of Settlement (the "Stipulation").

00649829;V1

(B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections Received to Date ("Segura Decl."), ¶12 (Exhibit D to accompanying Bigin Decl.). These notices informed members of the Classes of their right to object to the Settlement, how to opt out of the Classes and how to participate in the Settlement. Currently, no members of the Classes have either opted out of or objected to the Settlement.[2]

Since there is no objection to the Settlement, this memorandum incorporates the prior Rule 23(e)(1) briefing and reiterates that the Settlement continues to meet the factors relevant to final approval. This approach comports with Rule 23's intent to "present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." 2018 Advisory Notes Rule 23(e)(2). Lead Plaintiff addressed these core concerns in the Rule 23(e)(1) motion, where Lead Plaintiff "provide[d] the court with all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members." *Accord* 2018 Advisory Notes Rule 23(e)(1).

There has been no change in circumstances that negatively affect this Settlement since the Court granted preliminary approval. Accordingly, Lead Plaintiff respectfully requests final approval of the Settlement, certification of the Classes, and entry of the Judgment in the form attached as Exhibit B to the Stipulation.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural History of the Case

Between June 8 and July 19, 2018, various REV Group shareholders commenced putative class actions in the United States District Court for the Central District of California against certain

---

[2]  The deadline for filing objections is November 18, 2021.  Should any objections be timely filed, counsel will address them in their reply brief.

of the Defendants, styled *Marinoff v. REV Group, Inc.*, *et al.*, No. 2:18-cv-05095 (the "Marinoff Action"), *Rajaram v. REV Group, Inc., et al.*, No. 2:18-cv-05693 (the "Rajaram Action"), and *Bitar v. REV Group, Inc. et al.*, No. 2:18-cv-06239 (the "Bitar Action"), which were subsequently transferred to the United States District Court for the Eastern District of Wisconsin (the "Court") by consent of the parties.

On June 26, 2018, Gabriel Yandoli commenced a putative class action in the Waukesha County Circuit Court for the State of Wisconsin (the "Wisconsin State Court") against certain of the Defendants on behalf of himself and a putative class of REV Group's public stockholders styled *Yandoli v. REV Group, Inc. et al.*, No. 2018-CV-001163 (the "Yandoli Action").

On August 21, 2018, Bucks County commenced a putative class action in the Wisconsin State Court against certain of the Defendants on behalf of itself and a putative class of REV Group's public stockholders styled *Bucks County Employees Retirement System v. REV Group, Inc. et al.*, No. 2018-CV-001501.

Pursuant to the PSLRA, notice to the public was issued setting forth the deadline by which putative class members could move this Court to be appointed to act as lead plaintiffs. On September 19, 2018, the Court entered an order (i) consolidating the Marinoff Action, the Rajaram Action, and the Bitar Action into an action styled *In re REV Group, Inc. Securities Litigation*, Consol. Lead Case No. 2:18-cv-1268; (ii) appointing HMEPS as Lead Plaintiff; and (iii) approving Bernstein Liebhard LLP as Lead Counsel.

On November 2, 2018, Gabriel Yandoli and Bucks County, on behalf of themselves and putative classes of REV Group's public stockholders, filed in the Wisconsin State Court a consolidated complaint alleging violations of the Securities Act in connection with the IPO and the SPO offerings. On November 5, 2018, the Wisconsin State Court entered an order (i)

consolidating the Yandoli Action and the Bucks County Action in an action styled *Gabriel Yandoli et al. v. REV Group, Inc. et al.*, Consol. Case No. 2018-CV-001163 (the "Consolidated State Action"); and (ii) appointing interim lead and liaison counsel for the putative plaintiff classes in the Consolidated State Action.

On November 20, 2018, HMEPS filed its first amended complaint (the "FAC") in this Action. ECF No. 51. The FAC alleged claims under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants moved to dismiss the FAC on January 11, 2019. ECF No. 59.

After communications with Defendants, HMEPS moved on February 28, 2019 to file a second amended complaint ("SAC") which, *inter alia*, removed the Securities Act claims. ECF No. 66. On March 7, 2019, the REV Defendants[3] opposed this motion. On March 11, 2019, the REV Defendants moved to disqualify HMEPS as lead plaintiff and Bernstein Liebhard as lead counsel. ECF No. 74. On April 1, 2019, HMEPS opposed the motion to disqualify. ECF No. 78. After full briefing and an oral argument on June 27, 2019, the Court denied the motion to disqualify on July 10, 2019. ECF No. 86.

On July 30, 2019, the Court held a pre-motion conference call with the parties. *See* ECF No. 92. The Court allowed further briefing on the pending motion to amend. HMEPS submitted a renewed brief on August 20, 2019 (ECF No. 93), Defendants opposed on September 3, 2019 (ECF No. 94), and HMEPS replied on September 10, 2019 (ECF No. 97). On September 25, 2019, the Court granted HMEPS' motion to file the SAC. ECF No. 99.

On September 27, 2019, Lead Plaintiff filed its SAC, which alleged claims only under the Exchange Act. ECF No. 100. REV Group and certain Individual Defendants moved to dismiss

---

[3] The "REV Defendants" are REV Group and the Individual Defendants.

the SAC on October 9, 2019. ECF No. 103. Lead Plaintiff filed a detailed opposition to Defendants' motion to dismiss the SAC on October 30, 2019. ECF No. 106. That motion was fully briefed by November 13, 2019. ECF No. 108.

On June 3, 2020, the Parties to the Consolidated Federal Action informed the Court that they were engaged in settlement discussions and asked the Court to defer issuing a decision on REV Group and the Individual Defendants' pending Motion to Dismiss the SAC in the Action. ECF No. 110.

On July 6, 2020, the Wisconsin State Court stayed the Consolidated State Action until further order pursuant to a March 11, 2020 decision of the Wisconsin Court of Appeals.

**B.     Lengthy Settlement Discussions Culminate in an Excellent Arm's-Length Settlement**

The parties in the Action and Consolidated State Action engaged in continuous settlement discussions between June 2020 and March 2021. These discussions involved hotly contested discussions about liability, scienter (with respect to the Exchange Act claims), and damages. On March 15, 2021, Plaintiffs, on behalf of themselves and the Classes, and Defendants entered the Memorandum of Understanding (the "MOU") memorializing the Parties' agreement to settle the actions for $14,250,000 in cash, subject to approval of the Court.

On March 18, 2021, the Parties informed the Court that they had reached an agreement in principle to settle the claims against Defendants and asked the Court to continue to defer issuing a decision on REV Group and the Individual Defendants' pending Motion to Dismiss the SAC. ECF No. 117.

On May 19, 2021, Lead Plaintiff filed the Stipulation (ECF No. 120-1), as well as a Third Amended Complaint (ECF No. 121-1) (the "TAC") in this Action, including all the Classes' claims

and adding Gabriel Yandoli and Bucks County as additional plaintiffs for Securities Act claims on behalf of the Classes.

<blockquote>

**C.    Preliminary Settlement Approval is Granted and the Notice Program Undertaken**

</blockquote>

The Parties' detailed Settlement Agreement and supporting documents, along with Lead Plaintiff's Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement, were submitted to the Court on May 19, 2021. ECF Nos. 118-120. On August 24, 2021, the Court issued an Order Granting Preliminary Approval of the Settlement and Approving the Dissemination of the Notice, Proof of Claim, Postcard Notice and Summary Notice to the Classes ("Preliminary Approval Order"). ECF No. 124. Copies of the Notice, Summary Notice, together with the Proof of Claim, are attached as Exhibits A and B to the Segura Decl., Bigin Decl. Ex. 1. In granting preliminary approval of the Settlement, the Court also appointed JND as the claims administrator and set a hearing date of December 9, 2021 to consider the fairness, reasonableness, and adequacy of the Settlement, Plan of Allocation, and counsel's fee and expense request.

In compliance with the Preliminary Approval Order, and under the supervision of Lead Counsel, JND mailed copies of the Notice to (1) all potential members of the Classes who could be reasonably identified and (2) known brokers/nominees who may have purchased REV Group common stock for the benefit of investors. Segura Decl. ¶¶ 3-12. JND also issued the Summary Notice for publication in Investor's Business Daily and dissemination via PR Newswire. *Id*., ¶ 13. To date, JND has mailed more than 29,000 Notices. *Id*. ¶12. In addition, the Notice, Proof of Claim, and other documents relevant to the Settlement were posted on the websites of Lead Counsel, JND, and on a website, www.RevGroupSecuritiesLitigation.com, maintained by JND. *Id*. ¶¶15-16. The Notice describes the claims asserted in the Action, the contentions of the Settling Parties, a history of the litigation of the Action and Consolidated State Action, the terms of

the Settlement, the Proposed Plan of Allocation, the maximum amount of the fees and expenses that Plaintiffs' Counsel intends to seek, the right of members of the Classes to (i) be excluded from the Classes, (ii) or object to the Settlement, and (iii) make an appearance the Final Approval Hearing, and apprises members of the Classes of all deadlines relevant to the exercise of the above rights. *Id.* Ex. A.

The response of the Classes to the Settlement has been completely positive. As of November 4, 2021, no requests to be excluded from the Classes have been received, and no objections have been received. Segura Decl. at ¶¶18-19; Bigin Decl. ¶38.

## II. STANDARDS FOR FINAL APPROVAL OF SETTLEMENT

There is a strong public interest in settling litigation. This is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (federal courts naturally favor the settlement of class action litigation). As the court in *Goldsmith v. Tech. Solution Co.*, No. 92 C 4374, 1995 WL 17009594, at *1 (N.D. Ill. Oct. 10, 1995) acknowledged:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the Class Action context in particular, there is an overriding public interest in favor of settlement.

(Citations and quotations omitted); *see also McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 811 (E.D. Wis. 2009) (citing *Isby*, 75 F.3d at 1196; ("Federal courts look favorably upon the Settlement of class action lawsuits"). *See also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)

Rule 23(e) requires court approval for any class action settlement, assessing whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under Rule 23(e), a court considers whether:

> (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    i. the costs, risks, and delay of trial and appeal;
    ii. the effectiveness of any proposed method of distributing relief to the
    class, including the method of processing class-member claims;
    iii. the terms of any proposed award of attorneys' fees, including timing of
    payment; and
    iv. any agreement required to be identified under Rule 23(e)(3);[4] and

(D) the proposal treats class members equitably relative to each other.

*Id.* *Cf. Shah v. Zimmer Biomet Holdings, Inc.* *("Shah II")*, No. 3:16-cv-815-PPS-MGG, 2020 WL

5627171, at *5 (S.D. Ind. Sept. 18, 2020) (discussing 23(e)(2) criteria when granting final approval

of securities class action settlement).

    The Seventh Circuit has held that "[b]ecause settlement of a class action, like settlement of

any litigation, is basically a bargained exchange between the litigants, the judiciary's role is

properly limited to the minimum necessary to protect the interests of the class and the public."

*Armstrong v. Bd. Of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled*

*by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The Settlement must be viewed in its entirety

rather than focusing on any individual component and must be considered in the light most

---

[4] Here, the parties agreed to the MOU and a Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement"). The MOU is superseded by the Stipulation. The Supplemental Agreement sets forth the conditions under which REV Group has the discretion to terminate the Settlement if requests for exclusion exceed a certain agreed-upon threshold. As is standard in securities settlements, the Supplemental Agreement is kept confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. *See In re Illumina, Inc. Sec. Litig.,* No. 3:16-CV-3044-L-MSB, 2019 WL 6894075, at *9 (S.D. Cal. Dec. 18, 2019) (finding "the content and confidentiality of the Supplemental Agreement adequate and reasonable under the circumstances"). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal. The MOU, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement by the Parties.

favorable to the Settlement. *Id.* This court has noted that courts "should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights" the proceedings to approve a settlement should not be transformed into a mini-trial on the merits. *E.E.O.C.*, 768 F.2d at 889. *See also Isby*, 75 F.3d at 1196-97 (declining objecting members' invitation to determine merits of legal issues that remain unresolved, stating that this was a "necessary consequence of settlement"). *See also Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987); *Armstrong*, 616 F.2d at 314-15.

## III. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A. Lead Plaintiff and Lead Counsel Adequately Represented the Classes

On September 19, 2018, the Court appointed HMEPS as Lead Plaintiff after a finding that HMEPS was the "most adequate plaintiff" to represent REV Group investors. Lead Plaintiff HMEPS is a sophisticated institutional investor with experience leading securities class actions. *See, e.g.*, *In re KIT Digital Securities Litigation*, 12-civ-4199 (S.D.N.Y.) (HMEPS appointed lead plaintiff; achieved $6 million settlement); *In re Bofi Holding, Inc. Securities Litigation*, No. 3:15-cv-02324 (S.D. Cal.) (currently serving as lead plaintiff). HMEPS also agreed to coordinate with additional named plaintiffs Mr. Yandoli and Bucks County to ensure all members of the Classes had unquestionable standing to litigate the Actions.

Plaintiffs and the Classes benefited from the advice of knowledgeable counsel well-versed in shareholder class action litigation and securities fraud cases. Bernstein Liebhard LLP and Robbins Geller Rudman & Dowd LLP are among the most experienced and skilled firms in the securities litigation field and have long and successful track records in such cases. *See* Bigin Decl. Exhibits F and G.

Lead Counsel vigorously litigated the Action since its inception. Lead Counsel, among other things: (i) conducted a thorough investigation that included the review of publicly available

information regarding REV Group and interviews of former employees; (ii) prepared three detailed amended complaints; (iii) opposed two motions to dismiss; (iv) successfully opposed a motion to disqualify Lead Plaintiff and Lead Counsel; (v) successfully moved to amend the FAC over Defendants' opposition; (vi) analyzed documents produced by Defendants in connection with the proposed settlement; and (vii) consulted with experts concerning damages and loss causation. Prior to, and over the course of the litigation, Lead Counsel explored the strengths and weaknesses of the claims and defenses and developed a deep understanding of the merits of the claims.

Similarly, State Class Counsel vigorously prosecuted the claims of the IPO Class and the SPO Class in Wisconsin State Court. State Class Counsel, *inter alia,* conducted a thorough and wide-ranging investigation concerning the alleged misrepresentations and omissions made by Defendants in connection with the IPO and the SPO, which included an in-depth investigation of REVG; analyzing REVG's SEC filings, press releases, public statements, and other publications concerning REVG; analyzing securities analysts' reports concerning REVG; and interviews with former REVG employees. State Class Counsel drafted several complaints, including the consolidated amended complaint, litigated a contested motion for consolidation and the appointment of interim class counsel, opposed Defendants' motion to stay the Consolidated State Court Action, and litigated an interim appeal of the trial court's denial of Defendants' stay motion.

The Settlement was reached after nine months of negotiations between parties with extensive knowledge and expertise litigating securities class actions. At the conclusion of this process, Plaintiffs' Counsel believe that this Settlement is fair, reasonable, and adequate. *E.E.O.C.*, 768 F.2d at 889; *Isby*, 75 F.3d at 1200 (court placed significant weight on the opinion of plaintiff's well-respected attorneys); *Armstrong*, 616 F.2d at 325 (in determining the fairness of the class settlement, "the court is 'entitled to rely heavily on the opinion of competent counsel'");

*Hispanics United of DuPage Cnty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1170 (N.D. Ill. 1997) (same); *see also Isby*, 75 F.3d at 1200 (district court entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate); *Smoot v. Wieser Bros. Gen. Contr.*, No. 15-cv-424-jdp, 2016 WL 1736498, at *5 (W.D. Wis. Apr. 28, 2016) ("the court accepts counsel's opinion in favor of approval"); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P. (In re Harnischfeger Indus., Inc.)*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("opinion of competent counsel weighs in favor of approval of a settlement"); *In re Mexico Money Transfer Litig. (W. Union & Valuta)*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) ("the court places significant weight on the unanimously strong endorsement of these settlements by plaintiffs' well-respected attorneys"), *aff'd*, 267 F.2d 743 (7th Cir. 2001).

## B. The Settlement Was Negotiated at Arm's Length

Parties agreed to the Settlement after extended, arm's-length negotiations by experienced counsel. *See* Bigin Decl. ¶¶39-46 and the firm biographies of Plaintiffs' Counsel, attached as Exhibits F-J to the Bigin Decl. There was no collusion and negotiations were adversarial, as the parties negotiated for their clients' best interests. Highlighting the lack of any collusion between the parties is the fact that REV Group attempted to disqualify Lead Counsel and Lead Plaintiff during the litigation. The tensions between the parties are further evidenced on the docket through repeated requests for time to work though contested issues that took months to resolve. ECF Nos. 110-117. As the Court in *Hispanics United*, 988 F. Supp. at 1169 stated: "No one here has even suggested that this settlement is anything but the product of honest negotiations by otherwise vigorous adversaries. Furthermore, on this record, any such suggestion would be incredible." Thus, this Settlement was negotiated at arm's length, which further supports final approval.

### C. The Settlement Provides Adequate Relief for Members of the Classes

The $14.25 million Settlement recovers a substantial proportion of estimated damages for these Actions and well exceeds the median recovery for similar cases. The Settlement recovers approximately 9% of the $158.2 million in maximum estimated damages. The median settlement amount for similar cases in 2020 was 5.4% of damages as reported by Cornerstone Research, which tracks and aggregates court-approved securities class action settlements. *See* Bigin Decl. Ex. E at 7 (Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2020 Review and Analysis, Cornerstone Research (the "Cornerstone Report")). Cornerstone Research also found that the median settlement for all securities class actions in 2020 was $10.1 million. However, when a case settled during a pending motion to dismiss (like this Action), the median settlement was only $5.8 million and the recovery was 4.9% as a median percentage of damages. Cornerstone Report at 14. Thus statistically, the Settlement is an excellent result.

Indeed, courts have approved settlements that recovered a similar, or smaller, percentage of maximum damages than here. *See, e.g., Shah II*, 2020 WL 5627171, at *5 (noting the class action settlement was a "superb result" at "roughly 8% of plaintiffs' maximum possible damages"); *McPhail v. First Command Fin. Planning, Inc.,* No. 05CV179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

The Settlement is even more favorable because Plaintiffs' $158.2 million damage estimate would be subject to formidable challenges, which could have led to zero recovery. Indeed, proving loss causation and damages posed serious risks to recovery for the Classes. For example, the TAC alleges that a partially corrective disclosure on March 7, 2018 revealed issues that caused a material

price drop.  TAC ¶¶ 18-19, 114.  While Plaintiffs believe the partial disclosure revealed new material information related to certain alleged misstatements, damages would be cut substantially if the Court found otherwise.  In addition, the effects of disaggregating unrelated market information from the price movements on the dates of the partial disclosure – as well as the final disclosure – had the potential to reduce damages regardless.  *See Great Neck Capital*, 212 F.R.D. at 410 ("If the case were fully litigated there is also a possibility that plaintiffs could receive less. Defendants would assert that the losses were due to market, industry and general economic conditions rather than wrongful conduct.  Therefore, the act of assessing the strengths of plaintiffs' case against the settlement offer weighs in favor of approval of the settlement").

The Settlement is also reasonable because it provides the Classes with a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of litigating through trial and appeals.  While Plaintiffs believe the TAC would have been sustained, risks were shown through the Defendants' motions to dismiss.  If the TAC was sustained in full (or in part), Defendants would also likely have sought summary judgment and there was no guarantee that Plaintiffs would prevail against Defendants' challenges and, even if they did, how the Court's rulings would affect damages or how the case would be presented to the jury.  As part of the Settlement, REV Group produced 13,739 pages of documents relating to the allegations at issue. Bigin Decl. ¶50.  Plaintiffs found nothing in this discovery to make them question the reasonableness of the Settlement.  *See id*. The Settlement neutralizes litigation risks, avoids protracted proceedings, and provides a very good recovery for the Classes.

### 1.    The Effective Process for Distributing Relief to Members of the Classes

The Settlement will be effectuated with the assistance of an experienced claims administrator, JND Legal Administration. The Claims Administrator will employ a well-

established protocol for the processing of claims in a securities class action. Potential members of the Classes will submit, either by mail or online using the Settlement website, the Court-approved Claim Form. Based on the trade information provided by claimants, the Claims Administrator will determine each claimant's eligibility to participate and calculate their respective "Recognized Loss" based on the Court-approved Plan of Allocation. *See* Stipulation ¶ 27. Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to remedy and thereafter contest rejection. Any claim disputes that cannot be resolved will be presented to the Court for a final determination.

After the Settlement reaches its Effective Date and the passing of all applicable deadlines, payment will be made to Authorized Claimants. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, if feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants in an equitable and economic fashion to those who have cashed their initial checks. Once it is no longer feasible or economical to make further distributions, any balance that remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-sectarian, not-for-profit charitable organization serving the public interest designated by Lead Plaintiff and approved by the Court. *See* Notice (Stipulation Exhibit A-1) at 29 (¶ 69).

### 2. The Anticipated Attorneys' Fees and Expenses Are Reasonable

As set forth in the Notice, Lead Counsel intends to request attorneys' fees for all Plaintiffs' Counsel totaling no more than 20% of the Settlement Fund and Litigation Expenses of no more than $275,000, which may include an application for reimbursement by the Plaintiffs pursuant to the PSLRA. This fee request is reasonable and well below contingent fee percentages awarded in similar actions. *See, e.g., Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014) (30% fee award during pendency of motions to dismiss in securities case); *McKinnie*, 678 F. Supp. 2d at 809, 816 (30% fee award before defendants filed answer); *Great Neck Capital*, 212 F.R.D. at 412 (30% fee award in securities case). Lead Counsel's fee and expense request is detailed in their motion requesting fees and expenses.

### D. Members of the Classes Are Treated Equitably Relative to One Another

The Plan of Allocation treats all members of the Classes equitably, as required by Rule 23(e)(2)(D). Plaintiffs will receive a pro rata distribution from the Net Settlement Fund based on the same formulas that apply to the recovery of all similarly situated members of the Classes.

The Plan of Allocation was drafted with the assistance of Lead Plaintiff's damages expert to allocate proceeds fairly among eligible claimants. The Plan of Allocation calculates recognized claims based on each member of the Classes' relevant transactions in REV Group's common stock, taking into account the impact of inflation caused by the alleged misstatements, price movements of the alleged corrective disclosures of March 7, 2018 and June 7, 2018, and incorporating damage limitations and calculations under the securities laws. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) (an "allocation formula need only a reasonable, rational basis"); *White v. Nat'l Football League*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (approving Plan of Allocation recommended by

"experienced and competent" Lead Counsel and developed with the assistance of an experienced damages expert); *City of Providence v. Aeropostale, Inc*., No. Civ. 7132(CM)(GWG), 2014 WL 1883494, at *10 (S.D.N.Y. May 9, 2014) ("[a] plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel'") (citations omitted). Accordingly, the Settlement meets the standards for final approval as the Plan of Allocation is fair, reasonable, and adequate. Notably, no objections to the Plan of Allocation have been filed.

## IV.    THE CLASSES SATISFY RULE 23

As part of the Settlement, Plaintiffs respectfully request that the Court certify the proposed Classes (as defined in ¶ 1(g) of the Stipulation).[5]

### A.    The Classes Meet the Requirements of Rule 23(a):  Numerosity

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. *See Great Neck Capital,* 212 F.R.D. at 407 (finding numerosity in connection with a settlement; noting that "where many shares are traded on national stock exchanges, class members are usually so geographically dispersed and numerous that the impracticability of the joinder requirement is easily satisfied"). *See also Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986); *Shah v. Zimmer Biomet Holdings, Inc. ("Shah I")*, No. 3:16-cvr-815-PPS-MGG, 2020 WL 2570050, at *3 (N.D. Ind. May 21, 2020) (finding numerosity satisfied, noting that "numerosity is practically a foregone conclusion in a large securities class action like this").

---

[5] The Court preliminarily certified the Classes in connection with its consideration of preliminary approval of the Settlement. Nothing has changed since that time which would require a different result here.

Here, throughout the Relevant Period, REV Group common stock was offered for sale and traded on the New York Stock Exchange under the ticker symbol "REVG". These shares were purchased by thousands of investors, making joinder impracticable.

### B.   Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  *See Great Neck Capital*, 212 F.R.D. at 407 ("[t]he commonality requirement is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures made by the same parties even when damages vary").  Here, the central questions of whether the alleged misstatements and omissions regarding REV Group's operating efficiencies, growth, and earnings guidance were actionable are the same for members of each of the Classes.  *See Shah I*, 2020 WL 2570050, at *3 (finding "commonality is…satisfied" where "there are several questions of law and fact common to the class in a case like this in which the focus is what ZBH was required to tell the market, what it said, and whether those statements were fraudulent").

### C.   Rule 23(a)(3):  Plaintiffs' Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory.  *Great Neck Capital*, 212 F.R.D. at 408 ("generally, a class representative is considered 'typical' when his or her claims arise from the same practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory").  "Differences in the amount of damages, the size or manner of… purchase[], [type of purchase], and even the specific document[s] influencing the purchase will not render the claim atypical in most securities [actions]." *See Tsirekidze v. Syntax-Brillian Corp.*,

No. CV-07-02204-PHX-FJM, 2009 WL 2151838, at *4 (D. Ariz. July 17, 2009) (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D. Cal. 1986)).

Plaintiffs' claims are typical of those of the Classes.  Like other class members, HMEPS purchased the common stock of REV Group during the Relevant Period, and Bucks County and Yandoli purchased REV Group common stock pursuant to the IPO and SPO, respectively.  *See Shah I*, 2020 WL 2570050, at *3 ("typicality is present here as each of the named plaintiffs traded in ZBH shares during the class period which is a description of the entire class in a nutshell").

### D.    Rule 23(a)(4):  Plaintiffs Are Adequate Representatives

"The two key factors relevant to the determination of adequacy are an absence of potential conflict between the named plaintiff and absent class members, and an assurance of vigorous prosecution on behalf of the class." *Great Neck Capital*, 212 F.R.D. at 408.  Here, Lead Plaintiff HMEPS has and will continue to represent the interests of the 34' Act Class fairly and adequately.  Likewise, Bucks County and Yandoli have and will continue to represent the interests of the IPO and SPO Classes, respectively.  There is no antagonism or conflict of interest between HMEPS, Bucks County, Yandoli and their respective proposed Classes.  *See Shah I,* 2020 WL 2570050, at *3 (finding named plaintiffs adequate where no conflicts of interest).  Plaintiffs' Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. *See accompanying* Bigin Decl. Exs. F-J.  Plaintiffs' Counsel are well qualified and able to conduct the Actions and have ably and effectively represented Plaintiffs and the proposed Classes throughout the Actions.[6]

---

[6] Accordingly, Plaintiffs' Counsel satisfy the Class Counsel requirements of Rule 23(g) and Bernstein Liebhard has already been approved by the Court. *See* Text Only Order following ECF No. 33.

### E. The Classes Meet the Requirements of Rule 23(b)(3) – Predominance and Superiority

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is "readily met" in securities class actions. *Id.* at 625. Here, common questions of law and fact predominate over individual questions because the alleged misstatements and omissions affected all members of the Classes in the same manner (i.e., through public statements made to the market). *See also Great Neck Capital*, 212 F.R.D. at 409 ("courts have recognized the superiority of a class action in securities fraud cases. Such cases generally involve numerous defrauded investors whose claims are individually not large enough to make separate actions economically feasible"). Accordingly, the Classes meet the requirements to be certified under Rule 23(b)(3).

## CONCLUSION

For all the reasons stated herein, the Settlement and Plan of Allocation are fair, reasonable, and adequate. Thus, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation, certify the Classes, and enter the Judgment in the form attached as Exhibit B to the Stipulation.

Dated: November 4, 2021            Respectfully submitted,

**ADEMI LLP**

*/s/ John D. Blythin*

Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com

*Liaison Counsel for Lead Plaintiff Houston Municipal Employees Pension System and the Proposed Classes*

**BERNSTEIN LIEBHARD LLP**
STANLEY D. BERNSTEIN
MICHAEL S. BIGIN
JOSEPH R. SEIDMAN, JR.
l0 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
bernstein@bernlieb.com
bigin@bernlieb.com
seidman@bernlieb.com

*Lead Counsel for Lead Plaintiff Houston Municipal Employees Pension System and the Proposed Classes*

**ROBBINS GELLER RUDMAN & DOWD LLP**
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: (631) 367-7100
Facsimile: (631) 367-1173
SRudman@rgrdlaw.com

BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: (312) 674-4674
Facsimile: (312) 674-4676
BCochran@rgrdlaw.com

*State Court Counsel*

MALLERY & ZIMMERMAN S.C.
K. SCOTT WAGNER
731 North Jackson Street, Suite 900
Milwaukee, WI 53202
Telephone: 414/271-2424
Facsimile:  414/271-8678
swagner@mzmilw.com

*Liaison Counsel for State Class Counsel*

**JOHNSON FISTEL, LLP**
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

*Counsel for Gabriel Yandoli and Bucks County
Employees Retirement System*